## Thomas McMahan, Appellant, *v.* The Sewickly Mutual Fire Insurance Company.

*Insurance—Mutual insurance—Assessments—Notice.*

Where the charter of a mutual insurance company provides that if an assessment remains unpaid for a specified time " after notice thereof," the policy shall be forfeited, a forfeiture cannot be declared for nonpayment of an assessment where no notice of the assessment was given to the insured. In such a case where the insured, in suing upon his policy, declares that he was ready and willing to pay any claim due by him to the company, it is just and equitable that the assessments against him remaining unpaid should be deducted from the amount to which he is entitled under the policy.

Argued Oct. 8, 1896. Appeal, No. 154, Oct. T., 1896, by plaintiff, from judgment of C. P. Westmoreland Co., Aug. T., 1893, No. 508, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before McCONNELL, J.

Thomas McMahan, the plaintiff in this case, was the owner of a two-storied frame dwelling house, situate in the township of Rostraver, in the county of Westmoreland, at the time of the issuing of the policy of insurance by the company, and continued to own same to the date of the fire. The defendant was incorporated under the laws of the commonwealth of Pennsylvania, November 10, 1881. On application and payment of all charges by plaintiff to the defendant company a policy of insurance was issued by it to plaintiff, dated April 21, A. D. 1883, and mailed to his address, insuring a house and contents for $2,000, the policy to continue in force for a period of ten years from date of issue. On the 29th day of October, A. D.

1892, the house in the policy of insurance described, viz: a two-story frame dwelling house, was destroyed by fire, being a total loss. The defendant company was notified about the first day of November, 1892, in writing, of the fire and loss. The defendant company by its president, accompanied with three persons as adjusters, went on the premises of plaintiff to ascertain and determine the loss, and did adjust the loss sustained by the insured. The president asked for three months or ninety days to pay the amount agreed upon, and promised to send check in payment of same. At the expiration of the ninety days, the defendant company declined to pay the amount agreed, claiming that the policy of insurance was not in force; that it had been canceled in the year A. D. 1884, for the reason that the policy of insurance was issued to Thomas McMahan on a two-story frame house and contents, in Perry township, Fayette county, and that he, the said Thomas McMahan did not pay his assessment, in 1884; that the collector of the defendant company was exonerated from his accountability for the same.

Other facts appear by the charge of the court and the opinion of the Supreme Court.

The court charged in part as follows:

Thomas McMahan brings an action of assumpsit against the Sewickly Mutual Fire Insurance Company for the loss of a house and contents. Where that house is, what the contents of it was, the policy does not inform us. The policy being silent on that question, evidence has been admitted for the purpose of showing the location of this property. By the terms of this policy of insurance, it is made obligatory on the part of a person applying for membership in the company, to furnish the company a description of the property. There is some evidence in this case that is conflicting in regard to the location of the property, but as that don't seem to be insisted upon, we pass that question, and proceed to the questions which must be potential in disposing of this case.

This, as we have already learned, is a mutual fire insurance company. According to the constitution and by-laws, a party desiring to obtain membership in the company is required to make application to it, and pay a small fee, that is denominated a contingent fee of one dollar per thousand, perhaps, on the

insurance that the member desires to take out. In cash companies, as you know, the risk that is assumed by the company is liquidated in dollars and cents; for so much money the company undertakes to render us protection in case of loss. You pay them for taking that risk. When that money is paid, the contract is then an executed one. It may be paid in cash, or the company may receive a note, or something that is equivalent; at any rate the consideration is paid for all practical purposes. In a mutual company, however, the consideration is different. The insured promises to do a certain thing and in return for that the insurer promises to do some other thing. The contract is not an executed one, but an executory one—ambulatory; it walks forward from the time of the making of it, and it walks on two legs, not one. There is something to be performed on the part of the insured and there is something to be performed on the part of the insurer.. Now, what is this something that these parties are respectively to perform? The fifth article of the constitution goes very far toward measuring the rights of the parties under this policy. It reads as follows:

["Article 5. The members of the company will be liable to pay for all losses by fire in proportion to the amount they may be respectively insured for therein, to be assessed and collected as provided in the by-laws, and when an assessment shall be made by the board of directors, a duplicate thereof shall be made by the secretary, and placed in the hands of the collector, who shall, with as much dispatch as possible, collect the same, and should any member refuse to pay his assessments so made, when called on, it shall be the duty of the treasurer to sue at law such delinquent member, and if such assessment remain unpaid for the space of ninety days, after notice thereof shall be given to the said member by the treasurer, the policy of insurance or certificate of membership of such delinquent shall be forfeited and become void and of no effect."

Now, that article of the constitution undertakes to define the duties of members, the duty of collectors and treasurers in regard to assessments, and the duty of directors. It undertakes to define the duties and obligations of these parties in regard to the collection of what is owing by the party insured.

Now, it is the contention of the counsel for the plaintiff that that article requires a certain notice to be given before there

can be any obligation to pay.   I cannot so construe that article.
It says :  " The members of the company shall be liable to pay for
all losses by fire in proportion to the amount they may be re-
spectively insured for therein."   That is the duty that the insured
undertakes to perform ; he is liable for its payment.   It is true
that in the same article, the manner in which the officers of the
company are to proceed for the collection of that amount is dis-
tinctly pointed out, but that has no reference to the liability and
the duty of a member of the company to pay.   His duty is to
pay his proportion for all losses by fire.   The officers of the
company are given certain powers by which they can hasten the
performance of this obligation on the part of a member of the
company.   The treasurer is authorized to sue for this.   The
treasurer is also authorized to give the delinquent party a notice
to pay in ninety days, and after notice thereof shall be given to
such member by the treasurer for that period, the policy of
insurance and certificate of membership shall be forfeited, and
become void and of no effect.   The company has a right to ter-
minate the membership of any individual who is in default for
ninety days.   They can do that by giving him ninety days'
notice.   If he neglects the payment after receiving this notice,
no further action is required on the part of the company ; no
meeting of the directors to pass on the question of his expulsion
from the company is needed ; that provision is self-operative,
and goes into effect when the ninety days have elapsed after he
has received the notice pointed out there.]   [1]

Now, then, in order that that may be operative against a
defaulting member, the contract of the parties requires that he
should have ninety days' notice.   That is his right, and he can
insist on the performance of that right ; that is to protect him
against having snap judgment taken against him.   If he neg-
lects, after having such notice, then he has no reasonable ground
to complain ; that is what that provision is put there for.

Now, that being put there for his protection, it is within his
power to waive that if he sees fit.   In order to ascertain whether
or not he has waived the protection of that, you must look at
what he has said and done with reference to this policy.   Has
he treated this policy as being a binding one ?   Has he, as one
of the witnesses has testified, has he said that the policy had
elapsed or was at an end, or words to that effect, and that it was

no longer operative? [Has he shown vigilance in the discharge
of his liabilities as a member of this company? How long a
time has elapsed since the time of his membership began down
until the time when this action was brought? What losses
have occurred in the meantime? Is it reasonable that he should
have known of these losses; has he had reasonable ground to
know that there were losses, if he did not receive actual notice
of the existence of them? Or, on the other hand, has his whole
course of conduct indicated that his policy, so far as he was con-
cerned, was lapsed, and his membership at an end? If he neg-
lected the performance of his duty, knowing what it was, and
treated this policy as being at an end, as one of the witnesses
has testified he so declared to him, then after a loss occurs, he
should not be allowed to insist on the company performing its
part. That is a question for you to consider in passing on the
question of whether or not he has waived the ninety days'
notice that he was entitled to.] [2]

We will then pass on to another question, which is not
exactly a question of forfeiture. Some of the points which I
have spoken of in connection with the evidence on the question
of waiver are also pertinent to this question about which I am
about to speak. I have said that the duties of the company
on the one hand, and of the insured on the other hand, are
defined by the policy which Thomas McMahan presents in evi-
dence here.

Now, the company undertakes to say, "I will protect you in
case of loss." Why? In order that that may be binding, there
must be some consideration for that promise. Does the com-
pany get money for that? Is this contingent fee intended for
the risk of loss? If not, there must be some other considera-
tion. What is it? It is the performance of the duty of a mem-
ber. In order that a man may enforce an executory contract,
an ambulatory contract of this kind, he must perform his part—
for it is only good and binding as long as the conditions are per-
formed on both sides. The performance of it is the life of it.

Now, I have told you that the company could, by following
the provisions of the latter part of this article, sever his mem-
bership with the company by their own action, on account of
his default. But if he fails to perform his part by paying for
the losses that occur, and the company has not done its part in

order to bring about that forfeiture, it does not follow as a matter of course that the company is therefore bound to pay. [Were there losses that occurred between the time of the issuing of this policy and the time of the occurrence of this fire? Did Thomas McMahan know of such losses, or ought he, as a member of the company, to have known of them? Has he had a reasonable length of time to ascertain whether or not he has been performing his duty as a member of this company? What effort has been made on his part to perform the thing in return for which the company promised protection? It may be that if Thomas McMahan, even after the occurrence of this fire, would have come up and paid his assessments, that he would have had the right to have done so, as long as the company did not enforce this clause of forfeiture, which they could have enforced after ninety days' notice. I say it may be that Thomas McMahan, even after the loss occurred, could have come up and paid this money or tendered payment on his part, and then insisted on the performance of the contract. Has he had reasonable ground to believe that there were losses occurred; has there been a sufficient length of time elapsed to make it a duty on his part to inquire whether or not he has done that which the company required him to do before they would pay for his loss? The reasonableness of this is a matter that must be submitted to this jury; you are to determine this matter. If he knew of these losses, and knew that he was not performing his part of the contract, he was not doing that which the contract said was to purchase protection. If he had gone to the company, and the company had refused to receive the money, and he had tendered it, that would have shown his willingness to render the consideration which the company was entitled to receive. That would have been his part of it. It is the consideration that is the life of the contract.] [3]

Now, you are to look at those questions under all the evidence in the case, and determine whether or not the plaintiff in this case has performed his duty; whether he has had a reasonable length of time; there being no time stipulated within which he must perform it other than the forfeiture clause that I spoke of a while ago. Has he had a reasonable time in which to perform it; does he know of these losses; was it his duty to know of these losses; has he paid the consideration if he does know

of them, or has he tendered payment of them? His willingness now is not sufficient; a declaration of willingness is not sufficient under that branch of the article. That would be a very material thing under the forfeiture clause at the latter part of the article there; this question of notice is a very material thing there, but it is not a material thing on the portion of the article that I now speak of. There no length of time having been fixed in which he was to perform his duty, the question of the reasonable length of time is a question that the jury must determine; whether he could reasonably know of his obligation in this regard and tender performance of it.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–3) above instructions. quoting them.

*S. A. Kline*, for appellant.—We think this case comes within a line of numerous cases, holding that an adjuster of any insurance company has a perfect right to waive proofs of loss, and even review a policy that has been void for breach of warranty, and settle, adjust and compromise a loss and bind the company by such settlement: Snowden v. Kittanning Ins. Co., 122 Pa. 502; McGonigle v. Agricultural Ins. Co., 167 Pa. 365.

Insurance companies must act in strict good faith with the insured, and any condition of the policy may be waived by acts in pais by the company: Wagner v. Dwelling House Ins. Co., 143 Pa. 338; McFarland v. Ins. Co., 134 Pa. 590; Gould v. Ins. Co., 134 Pa. 570; Ins. Co. v. Brown, 128 Pa. 392; Wachter v. Assurance Co., 132 Pa. 428.

It is not contended that notice of the cancelation of the policy of insurance was ever given to the insured by any one. A cancelation to be valid, the insured must have notice of the cancelation or intended cancelation: 1 Wood on Ins. 113; Arnfeld v. Guardian Assurance Co., 37 W. N. C. 461; Scott v. Sun Fire Office, 133 Pa. 322.

*James S. Beacom*, with him *David L. Newill*, for appellee.— The contract is one of mutuality, and requires the insured to pay the assessments for the losses of co-members as a condition precedent to any recovery for his own loss: Washington Mut. Fire Ins. Co., v. Rosenberger, 3 W. N. C. 16.

All persons insured in a mutual company are affected with knowledge of its laws and regulations and are bound by them: Mitchell v. Lycoming Mut. Ins. Co., 51 Pa. 402 ; Burger v. Farmers' Mut. Ins. Co., 71 Pa. 422 ; Standard Mut. Live Stock Ins. Co. v. Madara, 13 Pa. C. C. 555.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 4, 1897:

While it may be conceded, as claimed by defendant, that the plaintiff must be presumed to have known the terms of the charter and by-laws, it by no means follows that the mere existence of unpaid assessments worked a forfeiture of his membership in the insurance company. No duty was imposed on him to inquire, in the first instance, whether or not any assessments had been made. It would only have been after notice had been given by the executive officers whose peculiar function it was to assess and collect, that action on his part would have become imperative. This will appear from even a cursory reading of the charter. It expressly provides, in section 5, that when an assessment shall be made by the board of directors—the secretary shall place a duplicate in the hands of the collector, and, upon the refusal of any member to pay, the treasurer shall bring suit, and if such assessment remain unpaid for the space of ninety days " after notice thereof," the policy of insurance or certificate of membership of such delinquent shall be forfeited. The whole burden of initiative is placed on the company officers ; and their power to declare a forfeiture of membership is expressly made dependent on default in payment " after notice." It is not alleged that any notice was given the plaintiff in this case of assessment against him until after suit brought. That being so, he was not bound to pay or tender payment of assessments of which he was not notified; and was therefore entitled to maintain an action for his loss under the terms of his policy, unless estopped by voluntary relinquishment of his membership, of which there was some evidence to go to the jury.

In his fourth prayer for instructions, plaintiff declares he " was ever ready and willing to pay any and all claims that might have been made or demanded of him " by the defendant company, etc. In view of this, it would be but just and equitable—in the event of a recovery—that the sum or sums duly

assessed against him and remaining unpaid should be first deducted from the amount to which he may appear to be entitled.

The case lies in a very narrow compass and needs no further discussion.

Judgment reversed and a venire facias de novo awarded.